IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THOMAS P. HALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:04-CV-633-B |
| ) | [WO] |
| JO ANNE B. BARNHART, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Thomas P. Hall ("Hall") appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his claim for disability benefits under Title II of the Social Security Act ("SSA") , 42 U.S.C. §§ 401 et seq.  Considered examination of the record, briefs, and relevant law inform the court's conclusion that the Commissioner's decision should be reversed and remanded for further administrative consideration.

**I**.  **Procedural History**

Hall's application on  November 3, 2000, alleged his onset of disability on June 23, 1992. Denied administratively and represented by counsel, Hall received a requested hearing before an Administrative Law Judge ("ALJ") on November 19, 2002, and upon receipt of additional evidence, the ALJ held a supplemental  hearing by telephone on June 26, 2003.

Born on November 4, 1952, Hall has a  twelfth grade education and can read, write and perform simple math calculations.  Because earnings records documented an insured status only through December 31,1997, the ALJ concluded properly that Hall must establish disability

commencing on or before that date.[1] Hall has not engaged in substantial gainful activity since his onset date. He claimed disability due to back problems, arthritis in the left wrist, and severed tendon in the right wrist; the ALJ determined that his severe impairments included degenerative joint disease with peripheral neuropathy of the left lower extremity, tendon injury of the right thumb, lumbar radiculopathy, osteoarthritis, degenerative disc disease with spondylosis, and right carpal tunnel and cubital tunnel syndrome. Medical testimony established that Hall's "peripheral neuropathy meets the severity requirements of Medical Listing 11.14 as of May 29, 2002" but the ALJ found no medical evidence that prior to December 31, 1997, Hall's neuropathy or any other severe impairment, considered individually and in combination, met or equaled in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. Hall's allegations of pain and functional limitations were deemed not "fully credible."

For the relevant period – *prior to December 31, 1997* – the ALJ found Hall, then age 45, unable to perform past relevant work as an industrial engine mechanic but able to perform a restricted range of light work activity within specified RFC limitations. He also determined that Hall had not acquired skills that would transfer to other jobs within the "light work" specification for his RFC. Nonetheless, the ALJ found Hall not disabled prior to December 31, 1997, principally in reliance on a finding which is challenged on this judicial review:

> Although the claimant's additional non-exertional limitations do not allow him to perform the full range of light work, using the above-cited rule[2] as a framework for decision-making

---

[1] R.18, 31; *see* 20 C.F.R. 404.1512(c).

[2] The referenced rule is incorporated in this finding: If the claimant had the exertional capacity to perform the full range of light work, 20 CFR 404.1568 and Medical-Vocational Rule 202.21. 20 CFR Part 404, Table No. 2 to Appendix 2 of Subpart P would direct a conclusion that the claimant is "not disabled." (R.32)

and the vocational expert's testimony demonstrate that, prior to December 31, 1997, there are a significant number of jobs in the regional or national economies which the claimant could perform. Examples of such jobs are: Assembler (unskilled, light) with 10,000 jobs regionally and 550,000 jobs nationally: Machine Offbearer (unskilled, light) with 6,000 jobs regionally and 345,000 jobs nationally; and Production Inspector/Check (unskilled, light) with 8,700 jobs regionally and 435,000 jobs nationally.[3]

In response to the ALJ's adverse decision on July 25, 2003, Hall presented to the Appeals Council purportedly "new and material" evidence from two treating physicians who had rendered opinions to the ALJ regarding Hall's disability subsequent to December 31, 1997, along with a third who concurred that Hall's disability existed prior to December 31, 1997.[4]  In reliance on these opinions, Hall argued, *inter alia:*

> This new evidence would provide a basis for changing the ALJ's decision that Hall did not have a severe impairment that would preclude his ability to perform a significant number of jobs in the regional or national economies prior to December 31, 1997. It also provides objective evidence of a condition that is sufficient to produce Hall's alleged symptoms prior to December 31, 1997; therefore, it may also change the weight the ALJ accorded to Hall's testimony.[5]

The Appeals Council did consider this information but disagreed with Hall's assessment that it provided a basis for changing the ALJ's decision; finding "no reason...to review the ALJ's decision," the Appeals Council denied Hall's request.[6]  Consequently, the Appeals Council's order denying review is a "final decision" of the Commissioner under § 405 (g). *Sims v. Apfel*, 530 U.S.

---

[3] R. 32-33.

[4] October 7, 2003 Retrospective Medical Source Opinion from Dr. Fleming Brooks, Hall's treating orthopedist; October 16, 2003 Retrospective Medical Source Opinion from Dr. Kurt D. Kraft, Hall's treating physician; October 21, 2003 Medical Source Opinion from Dr. O.D. Mitchum, Hall's prior treating physician. (R.258)

[5] R.258.

[6] R.5.

103 (2000); *accord Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir.1986); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This appeal to the United States District Court is timely and proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636 (c).

## II.   Standard of Review

Judicial review of the Commissioner's decision to deny benefits is limited.  The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), *citing Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560;

*accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994). The case may be remanded to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g)[7]; under sentence six of 42 U.S.C. § 405 (g)[8]; or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).

In deciding whether the Commissioner erred in denying review of the ALJ's decision, the court also must consider additional evidence made a part of the record by the Appeals Council in denying requested review. The Appeals Council will review a case if there appears to be an abuse of discretion by the ALJ, if there is an error of law, or if the ALJ's action, findings, or conclusions

---

[7] A sentence four remand requires a finding that the Commissioner's decision either is not supported by substantial evidence or reflects an incorrect application of the relevant law. *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1986). On remand under sentence four, the ALJ should review the case on a complete record. *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

[8] Sentence six of 42 U.S.C. § 405 (g) authorizes the court to order " additional evidence to be taken before the Commissioner ... upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Because the parties must file modified findings of fact, the court retains jurisdiction and does not enter a final judgment until the completion of sentence six remand proceedings. *Jackson*, 99 F.3d at 1095.

are not supported by substantial evidence. 20 C.F.R. § 416.1470; *see also, Parker v. Bowen*, 788 F.2d 1512, 1518 (11th Cir. 1986) (en banc). The Appeals Council's denial of review is subject to judicial review to determine if it is supported by substantial evidence. *Parker*, 788 F. 2d at 1520.

### III.  Issues

Hall presents two issues which challenge the ALJ's analysis at the fifth step of the sequential evaluation process for disability evaluations: [9]

> Whether the Commissioner erred in relying on the vocational expert's ("VE") testimony that was inconsistent with the Dictionary of Occupational Titles and was based on an incomplete hypothetical question; and

.

> Whether the Commissioner failed to articulate adequate reasons for discrediting Dr. Mitchum's and Dr. Brooks' opinions [as treating physicians]

Hall also claims error in the Appeals Council's failure to remand based on new and material evidence.

### IV.  Discussion

---

[9] A step four determination that a claimant has proven his inability to perform past relevant work leads to the fifth and final step of the sequential evaluation process, where the burden shifts to the Commissioner to show that the claimant can perform other jobs existing in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience. *See* 20 C.F.R. §404.1520; *Phillips v. Barnhart*, 357 F. 3d 1232, 1239 (11th Cir. 2004); *Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999); Cannon v. Bowen, 858 F.2d 1541, 1544 (11th Cir. 1988); *Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987). The ALJ must "articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002), *citing Allen v. Sullivan,* 880 F.2d 1200, 1201 (11th Cir. 1989). At this final evaluative step, "only an ability to do full-time work will permit the ALJ to render a decision of not disabled." *Kelley v. Apfel*, 185 F.3d 1211, 1214-15 (11th Cir. 1999), *citing* Social Security Ruling 96-8p.

### A.    VOCATIONAL EXPERT TESTIMONY

After vocational expert ("VE") Marcia Shulman testified that Hall's past work did not provide any skills easily transferable to light or sedentary work, the ALJ posited the hypothetical here in controversy in part for both its content and the expert's response:

> *ALJ*: All right. Next hypothetical. Please assume an individual of the claimant's age . . . *** [w]hich would then mean he was 45 years old by my rough calculations and his date last insured, back in December of 1997, has a high school education, and past relevant work experience.  Please assume that I find him capable of performing the exertional demands of a restricted range of light work in that he can occasionally lift and carry up to 15 pounds and frequently lift/carry up to 10 pounds as those terms are defined in the Commissioner's regulations.  Please factor into your response the following other exertional and non-exertional limitations.  That he can frequently use his hands for simple grasping and pushing, pulling of arm controls.  Constantly use his left hand for fine manipulation.  Occasionally use his right hand for fine manipulation.   Never use his legs for pushing or pulling of leg controls. Occasionally stoop, crawl, balance. Never crouch, kneel or climb.  Frequently reach overhead.  Occasionally work around unprotected heights, moving machinery. Operate automobiles and exposure to marked changes in temperature and humidity. Never operate heavy equipment.  For the purpose of this hypothetical experiences a moderate degree of pain.  All right, considering the exertional and non-exertional limitations in that hypothetical, do you have an opinion whether such an individual could perform any of the past relevant work you identified?
>
> *A*: I do have an opinion.
> *Q*: What is it?
> *A*: And that is no.
>
> *Q*: Do you have opinion whether such an individual could perform other work existing in the regional or national economy?
>
> *A*: Yes , sir.  I do.
> *Q*: And what is that?
> *A*: And there would be work consistent with that.
>
> *Q*: Could you please identify jobs consistent with that RFC and indicate the number of jobs exist in the regional or national economies?
>
> *A*: There would be assemblers, approximately 10,000 in Alabama, 550,000

nationally. Machine operators, approximately 6,000 in Alabama, 345,000 nationally.
\*\*\*

*A*: ...And production inspectors/checkers, approximately 8,700 in Alabama, 435,000 nationally.[10]

### 1.    *Incomplete Hypothetical*

Hall contends that "the ALJ failed to inform the VE of [his] limitations as to sitting, standing, and walking" and "specifically chose to rely on the VE's testimony in response to the first *light work hypothetical* that did not include a sit/stand option", "did not specify that he could only stand for four hours a day (less than the six hours generally required of light work)" and "did not match the ALJ's own RFC assessment".[11] (emphasis in original). Conceding the stated deficiencies in this hypothetical, the Commissioner emphasizes that the ALJ "subsequently asked the VE a more restrictive hypothetical question than his residual functional capacity determination [and] the expert responded that Hall "could still perform other work ..."[12] Hall responds that the Commissioner's

---

[10] R. 331-32.

[11] *Pl.'s Br.* at 8.

[12] Memorandum In Support Of The Commissioner's Decision at 5 ("*Def.'s Br.*") at 5, referencing the ALJ's second hypothetical:.

> *Q*: All right. Next hypothetical. Let's start with the same hypothetical. We're going to make it a sedentary RFC with a sit/stand option. All right, I take it that such an individual could not perform any of the past relevant work. Correct?
>
> *A*: That would be correct.
>
> *Q*: Could such an individual perform other work existing in the regional or national economy?
>
> *A*: Yes, sir. There would be other work.

argument requires the court "to assume that the VE's testimony would have been the same had the VE been presented with a complete hypothetical question."[13]

The parties do not dispute the controlling law. "In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question to the VE that comprises all of the claimant's impairments and limitations. *Phillips v. Barnhart,* 357 F. 3d 1232, 1240 n. 7 (11th Cir. 2004); *Wilson v. Barnhart*, 284 F. 3d 1219, 1227 (11th Cir. 2002). Nor does the record leave any ambiguity on the controlling fact: neither the first nor the second hypothetical[14] specified these limitations included in the ALJ's assessment that Hall retained the RFC to perform a restricted range of light work activity*:*

*the ability to stand for one hour at a time and a total of four hours in an eight-hour*

> *Q*: Please identify jobs consistent with that RFC and indicate in what number of those jobs exist in the regional and national economies.
>
> *A*: There would be assemblers, approximately 3,700 in Alabama, 185,000 nationally. Machine packers, approximately 1,200 in Alabama, 60,000 nationally. And checkers/graders/inspectors, approximately 2,900 in Alabama, 145,000 nationally.
>
> (R. 332-33).

---

[13]Pl.'s Reply Br. at 4.

[14]While this second hypothetical posited a restricted range of sedentary work grounded partially on a sit/stand option requirement, it fails to cite the frequency of Hall's need to alternate between sitting and standing. *See* SSR 96-9p, 1996 SSR LEXIS 6, at *18-19 ("An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically...The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing."). The court cannot speculate that the VE would have found Hall able to perform other work had this second question specified the frequency of Hall's need to alternate sitting and standing, the length of time needed to stand, the length of time needed to sit, or Hall's ability to walk.

*day; sit for one hour at a time and a total of six hours in an eight-hour day; walk for 30 minutes at one time and a total of two hours in an eight-hour day.*[15]

The court is thus compelled to embrace Hall's contention and to reject the Commissioner's reasoning that "substantial evidence supports the ALJ's determination that Plaintiff could perform other work existing in significant numbers in the national economy."

### 2. *Inconsistent Testimony with the Dictionary of Occupational Titles*

Hall next claims error in the ALJ's violation of Social Security Ruling ("SSR") 00-4p when he "(1) failed to ask the VE if his testimony was consistent with the Dictionary of Occupational Titles ("DOT") and its accompanying manual, the Selected Characteristics of Occupations ("SCO"), and (2) failed to explain ...his reasoning behind adopting the VE's testimony that conflicted with the DOT and the SCO as to the exertional and nonexertional requirements for the occupations of assembler, machine offbearer, and production inspector/checker." The ALJ's non-disability determination rests on the VE's testimony that Hall can perform in these jobs which exist in significant numbers.  Arguing that Hall's RFC nonetheless enables him to perform available jobs as an assembler or machine offbearer, the Commissioner attributes the ALJ's patent omission to harmless error.  Hall's refutation highlights the Commissioner's assertion of "a handful of assembler and offbearer occupations that she distills from the SCO without mentioning that the vast majority do not come within the requirements contained in the hypothetical question to the ALJ."[16]

Analytical scrutiny informed by the applicable law again discloses the merit of Hall's

---

[15]R. 30, 32.

[16]Pl.'s Br. at 5; *.Def.'s Br.* at 4; Pl.'s Reply Br. at 1-3.

contention. Pursuant to SSR 00-4p, the Commissioner "rel[ies] primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy", and inconsistent VE testimony, if relied upon, must be examined and explained.[17] For each of the three jobs identified by the VE, Hall demonstrates that the equivalent listings in the DOT and SCO[18] require either greater physical demands of reaching and fine manipulation or a higher skill level than his RFC for unskilled work.[19] The Commissioner cites three DOT-listed assembler jobs which require unskilled work without fingering or feeling along with other jobs which demand strength and physical exertional levels beyond the ALJ's light work limitation for Hall.[20] This record provides " no evidence," as Hall notes, "of the number of small subcategory of assembly occupations (or packers or checkers) available in the state of Alabama or

---

[17]SSR 00-4p, 2000 SSR LEXIS 8, at * 4-9. ("When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.***The [ALJ] will explain in the determination or decision how he or she resolved the conflict.")

[18]Hall cites to DOT 723.684-010 (Assembler) for the assembler job; DOT 692.686-010 (Assembly-Machine Operator) for the machine offbearer job; and DOT 221.382-018 (Production Clerk) for the production inspector/checker job. *See Pl.'s Exs. A, C,* and *E*.

[19]Only two unskilled jobs appear on the SCO list of various assembly-related posts, and they exceed Hall's fingering limitations. *See* DOT 706.684-102 and DOT 725.384-010, *Pl.'s Ex. B*. Similarly, the unskilled machine offbearer job is beyond his fingering limitations.  See DOT 692.686-010, *Pl.'s Ex. C*.  The production clerk position exceeds not also Hall's skill level but also his reaching, handling, and fingering limitations. See DOT 221.382-018, *Pl.'s Ex. E*.

[20]*See Def.'s Br*. at 4 (identifying  DOT and/or SCO- listed jobs as dry cell and battery assembler; wafer-cell battery Assembler; dry cell assembling-machine tender; woodworking-machine offbearer; chain Offbearer; and pipe smoking machine offbearer. Both the pipe smoking machine offbearer and the woodworking-machine offbearer jobs are classified as medium work; the latter requires occasional crouching and constant reaching and handling while the ALJ found that Hall can never crouch and can use his hands only frequently. The chain offbearer position is heavy work demanding constant reaching and handling..

nationally."(emphasis in original).[21]

The undisputed and determinative fact is that the ALJ did not specify jobs within the three occupations cited but instead referenced these occupations in broadly and generally stated categories. Absent any elaboration by the VE on the functional requirements specific to each category and any explanation for DOT listings in these occupational categories which clearly fall outside Hall's light work RFC, this court declines to engage in speculation and surmise, and instead concludes that no substantial evidence buttresses the ALJ's finding that Hall can engage in available work as an assembler, machine offbearer, or production inspector/checker.

### B.    CONSIDERATION OF MEDICAL OPINIONS

To the extent of the ALJ's reliance on medical evidence for his non-disability finding, Hall disputes any articulated good cause for discrediting the contrary assessments of Drs. Mitchum and Brooks, both treating physicians, and according more weight to the opinions of a non-examining medical expert and an examining specialist. Guided by the well-settled law acknowledged by the parties,[22] the court proceeds to analyze the relevant evidence.

---

[21]*Pl.'s Reply Br.* at 3.

[22]Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *Phillips v. Barnhart,* 357 F. 3d 1232, 1241(11th Cir. 2004); *Lewis v.* Callahan, 125 F.3d 1436, 1439-1441 (11th Cir. 1997). Good cause exists if the opinion is not bolstered by the evidence, the evidence supports a contrary finding; or the opinion is conclusory or inconsistent with the physician's own medical records. *Phillips*, 357 F. 3d at 1241-42

> *See also* 20 C.F.R. § 404.1527 (d) (When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the medical evidence supporting

### *1.      Dr. Mitchum's Opinions*

Contending that "Dr. Mitchum's opinion . . . **requires** a finding of disability," Hall argues:

> Dr. Mitchum's opinion that Hall cannot work for eight hours is critical since a person's RFC refers to work performed on a sustained eight hour a day, five day a week basis. *See* Social Security Ruling 96-8p.[23] Thus, although for purposes of Step Four, the ALJ could include part-time work as past relevant work, RFC, by definition, assumes that the claimant can perform the activity on a <u>full-time basis</u>. The ALJ improperly confused the concept of substantial gainful activity and determination of the claimant's RFC.  Pursuant to SSR 96-8p, RFC must represent the claimant's capacity to work in a full-time capacity.[24]

The Commissioner does not respond at all to this claimed error.

The ALJ's opinion confirms his improper, *step five* consideration of Hall's ability to perform part-time work:

> although Dr. Mitchum indicated the claimant was unable to work an eight-hour day; however, he indicated that [ ] it depended on the duties of the job as to how many hours the claimant could work.  I point out, however, that 20 C.F.R. 404.1572(a) defines substantial work activity as work activity that involves doing significant physical or mental activities, **even if it is done on a part-time basis**, or an individual does less, gets paid less, or has less responsibility than when he worked before. Thus, Dr. Mitchum's opinion that the claimant was unable to work an eight-hour day does not mean he was unable to perform substantial gainful work activity.

---

the opinion;  consistency with the record a whole;  specialization in the medical issues at issue;  other factors which tend to support or contradict the opinion.)  The ALJ must give "explicit and adequate reasons for rejecting the opinion of a treating physician." *Elam v. Railroad Retirement Board*, 921 F. 2d 1210, 1215 (11th Cir. 1991).

[23]SSR 96-8p provides, in pertinent part:
> Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

[24]*Pl.'s Br.* at 11.(emphasis in original).

R. 25-26.(emphasis in original)

Pursuant to SSR 96-8p, "only an ability to do full-time work will permit the ALJ to render a decision of not disabled" at step five of the sequential evaluation process. *Kelley v. Apfel*, 185 F. 3d 1211, 1214-15 (11th Cir. 1999). Thus, Hall is correct that the ALJ's incorrect application of the law cannot constitute good cause for rejecting Dr. Mitchum's opinion that he cannot work full-time.

Nonetheless, the court cannot end the "good cause" inquiry without examining the rest of the ALJ's cited reasons for giving "little weight" to Dr. Mitchum's opinions:

> *Dr. Mitchum's progress notes indicate the claimant is capable of returning to some form of work activity, despite his opinion on December 10, 1992 that the claimant "should be considered for disability" and on January 25, 1993, the claimant "will never be able to regain his ability to earn a satisfactory living."* In fact, Dr. Mitchum's progress note of March 1, 1996, reflects the claimant had resuming [*sic*] working as of that date. Further, *the WRE form completed by Dr. Mitchum indicates the claimant was capable of performing work activity involving* continuous sitting for eight hours; intermittent walking for up to two hours; bending, squatting, climbing, kneeling, and twisting for up to one hour; standing for up to four hours in an eight-hour work day; performing fine manipulation; some use of feet for operation of foot controls and repetitive movement....
> ***
> In addition, *the abilities Dr. Mitchum noted in the WRE contradict his opinions of December 10, 1992 and January 25, 1993, that the claimant was unable to perform substantial gainful work activity.* Although Dr. Mitchum rendered these opinions, I point out that *he is not a specialist in orthopedic matters*, but merely a general practitioner. Thus, little weight is afforded to his opinion. Additionally, it is significant to mention that *although Dr. Mitchum's progress notes though October 7, 1993, consistently reflect complaints of back pain, his subsequent notes reflect a two-year and five-month lapse in treatment from October 7, 1993 to March 1, 1996, and a four-year and eight-month lapse in treatment from March 1, 1996 to November 7, 2000.* These lapses in treatment suggest the claimant's medical problems were not of such severity as to warrant continued consistent medical attention. If they were of significant severity, it would be reasonable to assume that the claimant would have sought care on a more frequent basis subsequent to October 1993.[25]

---

[25] R. 25-26. (emphasis added)

14

Hall does not undermine this specification by the ALJ of inconsistencies in Dr. Mitchum's own records which do not bolster his opinion of Hall's inability to work as well as the evidence which supports a contrary finding. He maintains, however, that the ALJ lacked an adequate basis to discredit the opinions of his longtime treating physician, Dr. Mitchum, in favor of the opinions of Dr. Bernard, an orthopedist who "appears to have only examined [him] on two occasions- with the last being in early 1994- three years before the expiration of [his] insured status." [26] That the ALJ accorded more weight to the opinions of a specialist on issues related to his area of specialty is not error. *See* 20 C.F.R. §404.1527(d)(5). As noted by the ALJ, Dr. Bernard's opinion that Hall was capable of performing a range of light to medium work activity is supported by medical evidence, and as Hall's treating orthopedic specialist from 1992 through 1994, Dr. Bernard "was in the best position to give an assessment of [Hall's] residual functional capacity during that period."[27] Hall's complaint that Dr. Bernard's opinion should be discredited because he examined him in 1994 – over three years before the expiration of his insured status – lacks much probative value in light of his unexplained lapses in treatment from Dr. Mitchum from October 7, 1993 to March 1, 1996, and from March 1, 1996 to November 7, 2000.[28]

In sum, notwithstanding a single discredited reason, the court finds sufficient good cause for the ALJ's rejection of Dr. Mitchum's opinions in his articulation of other reasons which are

---

[26]*Pl.'s Br.* at 11.

[27]R.26.

[28]R. 26. *See Watson v. Heckler*, 738 F. 2d 1169, 1173 (11th Cir. 1984)(finding the ALJ's could properly discredit allegations of disabling pain, in part, based upon claimant's failure to seek treatment).

grounded on substantial evidence and based on a correct application of the applicable law.

### 2. *Dr. Brooks' Opinions*

Hall also attacks the adequacy of the ALJ's reason for giving no weight to the opinions of Dr. Fleming Brooks,[29] made on December 12, 2002 and June 23, 2003, that Hall could not perform sedentary work "years ago" and "prior to 1997." Because this physician's treatment for Hall "did not begin ...at any time on or prior to December 1997," the ALJ explained, "it is reasonable to assume he would not be able to render an accurate opinion regarding the claimant's medical condition or capacity during that time."[30] The court agrees and discerns no compelling arguments that the ALJ's "good cause" rationale is not grounded on the evidentiary record[31] or the relevant law.[32] Accordingly,

---

[29]In the ALJ's written decision, he, at times, erroneously refers to Dr. Brooks as Dr. Fleming. However, as the Commissioner correctly points out, "Fleming" is Dr. Brooks' first name.

[30]R. 27. The ALJ based his opinion on records establishing this doctor's treatment of Hall in July 2000 for right wrist pain treatment and for back pain from March 2002 through December 2002.. Further underscoring the lack of objective medical evidence for Dr. Brooks' opinion, the ALJ reasoned:

> It is also significant to mention that in the MSS dated six months prior to the hearing, Dr. Fleming refused to identify the date of onset of the claimant's impairment severity. However, in the MSS dated three days prior to the supplemental hearing, Dr. Fleming identified a date of onset of impairment severity, which, ironically, happened to be prior to 1997. I find it odd that Dr. Fleming would be able to specify the date of onset of impairment severity just prior to the supplemental hearing, and not be able to do so several months earlier. I note that Dr. Evans [the medical expert] testified the MSS of June 23, 2003, does not explain why the claimant has less than sedentary work ability since prior to 1997, when other evidence indicates that claimant could do more than sedentary exertion

(R.27)

[31]The ALJ gave "controlling weight" to treating specialist Dr. Bernard's 1994 opinion that Hall retained the RFC to perform light to medium work activity and "great weight" to Dr. Evan's [medical]expert opinion of Hall's ability to perform a range of light work prior to December 1997. Hall himself acknowledged that prior to December 1997, he could stand at least two hours at a time

substantial evidence supports the ALJ's articulated reasons for discrediting Dr. Brooks' opinion that Hall could not o perform even sedentary work prior to 1997.

### C. NEW AND MATERIAL EVIDENCE

In response to Hall's complaint about the Appeals Council's refusal to remand for consideration of the post-hearing opinions of Drs. Kraft, Mitchum, and Brooks, of his disability prior to December 1997, the Commissioner argues that the Council did consider this evidence but it fails to satisfy the *new, non-cumulative* and the *materiality* prongs of the controlling standard for remand.[33] The former prong requires the production of new evidence not contained in the administrative record, *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988), while the latter requires "a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). Failure to establish either prong means that

---

for a total of "maybe six, eight hours. Six hours, seven hours", sit "maybe four or five hours" at time for a total of "four or five hours maybe," and walk two hours at a time for a total of "two to three" hours. (R. 287-289). Upon inquiry from his counsel, Hall added that he "probably could" do a sedentary job such as a telephone operator before 1997 and his pain increased to the point that he could not perform any job "around 1997..., '98" (R. 299).

[32]*See Phillips*, 357 F. 3d at 1241-42; *see also Hudson v. Heckler*, 755 F. 2d 781, 784 (11th Cir. 1985)("The opinion of a treating physician may be rejected if it is 'so brief and conclusory that it lacks persuasive weight or when it is unsubstantiated by any clinical or laboratory findings.'")(internal citations omitted).
.

[33]To secure a remand under sentence six of 42 U.S.C. § 405(g) for administrative consideration of new evidence, the claimant must establish that (1) there is *new, non-cumulative evidence*; (2) the evidence is *material* because it is relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is *good cause* for failure to submit the evidence at the administrative level. *Vega v. Commissioner of Social Security,* 265 F. 3d 1214 (11th Cir. 2001); *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998); *Hyde v. Bowen*, 823 F.2d 456,459 (11th Cir. 1987); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

remand is not appropriate. *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987).

The Commissioner is correct that the record before the ALJ "already contained three statements from Dr. Mitchum" and "two statements from Dr. Brooks regarding their opinions as to Plaintiff's ability to perform work." Dr. Kraft's opinions regarding the onset of Hall's disabling limitations were not presented to the ALJ. Because the statements presented to the Appeals Council "are substantially the same as the statements properly discredited by the ALJ," the Commissioner argues that "there is no reasonable possibility that the evidence from Drs. Kraft, Mitchum, and Brooks would have changed the ALJ's decision."[34] Hall insists on the materiality of these separate opinions addressing the core of his claim for disability prior to 1997 especially because the ALJ rejected as insufficiently detailed the only medical opinion – rendered by Dr. Brooks – supporting that claim.[35]

The court's scrutiny of this evidence provides support for the Commissioner's view. Dr. Kraft offers no objective medical evidence to buttress his opinions that "the condition for which Mr. Hall has requested full disability, as of 1997, was present and unchanged prior to that time" and that "Hall's condition has remained fairly consistent since his initial injury, which occurred prior to 1997."[36] Thus, they suffer from the same deficiencies cited by the ALJ as good cause for discrediting the similar opinions by Drs. Mitchum and Brooks. Neither Dr. Mitchum's nor Dr. Brooks' post-hearing submissions disclose additional clarification, support or explanation, for their record

---

[34]*Def.'s Br.* at 8-9.

[35]*Pl.'s Reply Br.* at 7-8.

[36]Dr. Kraft's conclusory opinion that Hall's "currently disabled state began well prior to 1997" is not cured by his adoption of Dr. Allen's evaluation on May 29, 2002 documenting Hall's nerve dysfunctions.

opinions, and like Dr. Kraft's newly proffered opinion, they fail to demonstrate by data or other probative evidence the basis for conclusions that Hall's disability existed prior to the end of 1997. Consequently, the court readily concludes that the new evidence considered by the Appeals Council presented no reasonable possibility for a change in the administrative outcome of Hall's disability claim.

### V. Conclusion

As explained in this *Memorandum Opinion*, the ALJ's determination that Hall retained the residual functional capacity to perform other work existing in the national economy is not supported by substantial evidence. It is, therefore,

**ORDERED** that the decision of the Commissioner is **REVERSED** and this cause is **REMANDED**, pursuant to *sentence four* of 42 U.S.C. §405(g), for further administrative consideration consistent herewith..

A separate judgment will be entered.

Done this 26th day of September, 2005.

/s/ **Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE